Filed 8/23/22

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| In re Dominick D. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E078370 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J290289 & J290290) |
| v. | OPINION |
| T.T., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Annemarie G. Pace, Judge. Affirmed in part, vacated in part, and remanded with directions.

Christine E. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel and Richard W. Van Frank, Deputy County Counsel, for Plaintiff and Respondent.

1

On this appeal from the juvenile court's dispositional findings and orders, T.T. (Mother) challenges the court's finding that the Indian Child Welfare Act of 1978 (25 U.S.C. §§ 1901 et seq.) (ICWA) does not apply to the dependency proceedings concerning her son, Dominick D. (Welf. & Inst. Code, § 224.2, subd. (i)(2), unlabeled statutory citations refer to this code.) She argues the juvenile court failed to ensure that San Bernardino County Children and Family Services (CFS) discharged its duty of initial inquiry into Dominick's possible Indian[1] ancestry under section 224.2, subdivision (b). We agree. We decline to address the parties' arguments concerning harmlessness, however, because ICWA inquiry and notice errors do not warrant reversal of the juvenile court's jurisdictional or dispositional findings and orders other than the finding that ICWA does not apply. (*In re Brooke C.* (2005) 127 Cal.App.4th 377, 385-386 (*Brooke C.*); *Tina L. v. Superior Court* (2008) 163 Cal.App.4th 262, 268 (*Tina L.*); *In re Veronica G.* (2007) 157 Cal.App.4th 179, 188 (*Veronica G.*); see *In re K.B.* (2009) 173 Cal.App.4th 1275, 1282 (*K.B.*); contra, *Nicole K. v. Superior Court* (2007) 146 Cal.App.4th 779, 785 (*Nicole K.*).) We accordingly vacate that finding and remand for compliance with ICWA and related California law, but we otherwise affirm.

BACKGROUND

On August 22, 2021, CFS responded to a referral alleging that Mother had left her five-month-old son, Dominick, without appropriate arrangements. Mother reportedly

---

[1] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

showed up unannounced at the home of N.M., a woman she had met through a Facebook group, and handed Dominick to her to watch while Mother went to Nevada. N.M. told Mother that she could not watch the child and did not even know the child's or Mother's name. Mother provided her name and phone number and the baby's name, and she then left. N.M. ran after Mother, who drove off with an unknown male. N.M. observed that there was no child car seat in Mother's vehicle, and Dominick had been left with no diaper bag, formula, or bottles. N.M. called the county sheriff to report the incident and request that someone pick up the child.

The CFS social worker spoke with W.M., who was initially identified by law enforcement as Dominick's maternal grandfather but is identified in later reports as the child's maternal great-grandfather.[2] W.M. said he had arrived from Texas approximately two months earlier to help Mother and was Dominick's primary caregiver. He confirmed that Mother also has an older daughter who lives with her father. (The older daughter is not a subject of this appeal.) There is no indication that CFS asked W.M. whether Dominick is or may be an Indian child.

---

[2] The responding deputy's identification of W.M. as Mother's father or Dominick's maternal grandfather appears to have been in error. Mother identified W.M. as her grandfather and named a different person as her father, and W.M. is thereafter identified in the record as the child's maternal great-grandfather. Grandparents are included in the statutory definition of "'extended family member,'" but great-grandparents are not. (25 U.S.C. § 1903(2); Welf. & Inst. Code § 224.1, subd. (c).) The distinction ultimately has no impact on our analysis because W.M., who had been Dominick's primary caregiver for two months, is included within "others who have an interest in the child," for whom the statutory duty of initial inquiry is the same as for "extended family members." (§ 224.2, subd. (b).)

3

CFS filed a petition alleging Dominick is a person described by section 300, subdivisions (b)(1) and (g)(3). The petition's Indian Child Inquiry Attachment, Judicial Council form ICWA-010(A), states that the CFS social worker asked Mother about Dominick's Indian status on August 24, 2021, and the inquiry gave no reason to believe he is or may be an Indian child. Mother was present at the detention hearing on August 25, 2021. In response to the court's inquiry, Mother stated she had no information that she has Indian ancestry. She stated that Dominick's father was unknown. Mother filed a Judicial Council form ICWA-020, Parental Notification of Indian Status, stating she has no known Indian ancestry. Mother also completed a Family Find and ICWA Inquiry form (CFS 030A), checking the box for "Unknown" in response to the question, "Do you have/may have Native American Ancestry?" The court found a prima facie case that Dominick came within section 300, ordered him detained from Mother, and set a jurisdiction and disposition hearing.

The CFS social worker met with Mother on August 31, 2021, and took a family history in which Mother identified her father, mother, and three sisters, two of whom are adults. In response to the social worker's inquiries, both Mother and maternal aunt T.D. denied Indian ancestry. The social worker also interviewed maternal great-grandfather M.W. but did not ask him about Indian ancestry. After conducting an emergency assessment, CFS placed Dominick in the temporary care of T.D. There is no indication in the record concerning CFS's efforts to locate or contact the child's maternal

4

grandparents or his other adult maternal aunt or to ask them about Dominick's possible Indian ancestry.  (See § 224.2, subd. (b); § 309, subd. (e)(1).)

The juvenile court found true the allegations that Mother failed to provide a safe and appropriate living arrangement for Dominick, and that Mother has untreated mental illness that impairs her ability to provide appropriate care and supervision for the child. The court found Dominick's father was unknown and that ICWA did not apply to the child.  The court removed Dominick from Mother's custody, placed him in the home of T.D., and ordered reunification services for Mother.

DISCUSSION

ICWA was enacted to curtail "abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes." (*Mississippi Band of Choctaw Indians v. Holyfield* (1989) 490 U.S. 30, 32.)  "ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards a state court must follow before removing an Indian child from his or her family." (*In re T.G.* (2020) 58 Cal.App.5th 275, 287.)  In a juvenile dependency proceeding, an Indian child is any unmarried person who is under age 18 and is either (a) a member of a federally recognized Indian tribe or (b) is eligible for membership in a federally recognized Indian tribe and is the biological child of a member of a federally recognized Indian tribe.  (25 U.S.C. § 1903(4) & (8); see § 224.1, subd. (a).)

5

To determine whether ICWA applies to a dependency proceeding, the juvenile court and CFS have "an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a).) This duty to inquire consists of two phases—the duty of initial inquiry and the duty of further inquiry. (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.) The duty of initial inquiry begins at the referral stage when CFS must ask "the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." (§ 224.2, subd. (a).) Once a child is taken into temporary custody, the duty of initial inquiry includes asking the child, parents, legal guardian, extended family members, and others who have an interest in the child whether the child is or may be an Indian child. (§ 224.2, subd. (b); § 306, subd. (b).) Extended family members include adults who are the child's stepparents, grandparents, aunts, uncles, brothers, sisters, nieces, nephews, or first or second cousins. (25 U.S.C. § 1903(2); § 224.1, subd. (c).) The juvenile court must ask each participant at the first appearance "whether the participant knows or has reason to know that the child is an Indian child," and the court must "instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c); see 25 C.F.R. § 23.107(a).) The court must also order each parent to complete a Judicial Council form ICWA-020, Parental Notice of Indian Status. (Cal. Rules of Court, rule 5.481(a)(2)(C) & (a)(3).)

If the initial inquiry gives the juvenile court or CFS "reason to believe that an Indian child is involved in a proceeding," then "further inquiry regarding the possible Indian status of the child" must be made. (§ 224.2, subd. (e).) Mother does not contend that there is "reason to believe" Dominick is an Indian child, so only the duty of initial inquiry is at issue here.

CFS is required to document its ICWA inquiry efforts throughout the proceedings, beginning with the petition, which must be filed with a completed Judicial Council form ICWA-010(A), Indian Child Inquiry Attachment (Cal. Rules of Court, rule 5.481(a)(1)). All filings thereafter must include "a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status." (Cal. Rules of Court, rule 5.481(a)(5).) If the court finds that CFS has complied with its duty of inquiry and there is no reason to know that the child is an Indian child, then the court may find that ICWA does not apply. (§ 224.2, subd. (i)(2); Cal. Rules of Court, rule 5.481(b)(3)(A).) Before the juvenile court makes a finding that ICWA does not apply, it must "first ensur[e] that [CFS] has made an adequate inquiry under ICWA and California law, and if necessary, the court must continue the proceedings and order [CFS] to fulfill its responsibilities." (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 431.) A juvenile court's finding that ICWA does not apply implies "that social workers had fulfilled their duty of inquiry." (*In re Austin J.* (2020) 47 Cal.App.5th 870, 885.) "We review a court's ICWA findings for substantial evidence. [Citations.] 'We must uphold the court's orders and findings if any substantial evidence, contradicted or

uncontradicted, supports them, and we resolve all conflicts in favor of affirmance.' [Citation.] Mother, as the appellant, 'has the burden to show that the evidence was not sufficient to support the findings and orders.' [Citation.]" (*Ibid.*)

Mother argues the juvenile court's finding that ICWA does not apply to Dominick is not supported by substantial evidence because CFS did not discharge its statutory duty of initial inquiry. First, CFS failed to ask "the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." (§ 224.2, subd. (a).) Second, CFS did not ask maternal great-grandfather W.M. about Dominick's potential Indian status, as required of "others who have an interest in the child." (§ 224.2, subd. (b).) Third, CFS failed to contact three of the extended family members identified by Mother—maternal grandmother, maternal grandfather, and maternal aunt S.—to ask them "whether the child is, or may be, an Indian child." (§ 224.2, subd. (b).) CFS expressly concedes that it failed to ask the reporting party or W.M. about Dominick's Indian ancestry, and by failing to address Mother's contention regarding extended family members, CFS implicitly concedes that it did not make any ICWA inquiry of maternal grandparents or maternal aunt S. (See *People v. Bouzas* (1991) 53 Cal.3d 467, 480; *People v. Isaac* (2014) 224 Cal.App.4th 143, 147, fn. 4.) We agree with Mother that by failing to ask the reporting party, W.M., the maternal grandparents, and maternal aunt S. about Indian ancestry, CFS failed to discharge its duty of initial inquiry.

CFS argues that any ICWA inquiry error was harmless, and Mother argues that it was not. We need not address those arguments, because ICWA inquiry and notice errors

8

do not warrant reversal of the juvenile court's jurisdictional or dispositional findings and orders other than the ICWA finding itself. (*Brooke C.*, *supra*, 127 Cal.App.4th at pp. 385-386; *Tina L.*, *supra*, 163 Cal.App.4th at p. 268; *Veronica G.*, *supra*, 157 Cal.App.4th at p. 188; see *K.B*, *supra*, 173 Cal.App.4th at p. 1282; contra, *Nicole K.*, *supra*, 146 Cal.App.4th at p. 785.) The First District recently reached a similar conclusion in *In re S.H*. (Aug. 12, 2022, A163623) __ Cal.App.5th__ [2022 Cal.App. Lexis 694].) We accordingly vacate the finding that ICWA does not apply, but we otherwise affirm and direct the juvenile court on remand to order CFS to comply with its inquiry and (if applicable) notice obligations under ICWA and related California law.

DISPOSITION

The finding that ICWA does not apply is vacated. The juvenile court is directed to order CFS to comply with its inquiry and (if applicable) notice obligations under ICWA and related California law. In all other respects, the dispositional findings and orders are affirmed.

CERTIFIED FOR PUBLICATION

MENETREZ_____<br>J.

We concur:

RAMIREZ_____
                P. J.

RAPHAEL_____
              J.

9